IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CASE NO. 1:19-CR-00115-TWT-LTW |
| EVER BOYZO-MONDRAGON,<br>and BRYAN ALEXANDER ARCHILA<br>MATEO, | |
| Defendants. | |

## FINAL REPORT AND RECOMMENDATION AND ORDER CERTIFYING THIS CASE READY FOR TRIAL

This matter is before the Court on a Consolidated Motion to Suppress ([Doc. 53])

filed by Defendant Ever Boyzo-Mondragon ("Boyzo-Mondragon") and two Motions

to Suppress ([Docs. 55, 61, 104]) filed by Defendant Bryan Alexander Archila-Mateo

("Archila-Mateo").[1]  On August 3, 2020, the undersigned held an evidentiary hearing

regarding certain issues raised in the Motions, as will be explained more fully below.

[Docs. 95, 97].  After the hearing, Defendants filed additional briefs in support of their

other Motions ([Docs. 101, 104]), the Government filed its Responses ([Docs. 107,

---

[1] Defendant Boyzo-Mondragon also filed a Motion to Suppress Statements and
a request for a <u>Jackson</u>-<u>Denno</u> hearing, which has been deferred to the District Judge.
[Doc. 50]; <u>see also</u> [Doc. 76].

108]), and Defendant Boyzo-Mondragon filed a reply ([Doc. 112]).  The Motions are ripe for consideration and, for the reasons outlined below, the undersigned **RECOMMENDS** that the Motions be **DENIED**.

## BACKGROUND

### A.    The Tracker Warrant

An Atlanta task force group of the Drug Enforcement Administration ("DEA") began investigating an inmate at Georgia's Johnson State Prison in October 2018. [Doc. 107-2 at 5].  As part of that investigation, Task Force Officer ("TFO") Howard Spitzer used a confidential source to conduct four undercover drug buys that were brokered by the inmate.  [Id.].  In January 2019, TFO Spitzer personally conducted an undercover drug buy brokered by the inmate for nearly 700 grams of methamphetamine.  [Id. at 5–6].  The inmate, through the confidential source, directed TFO Spitzer to go to the Arbor Mill apartments in Norcross, Georgia.  [Id. at 6]. Eventually, an individual later identified as Defendant Boyzo-Mondragon arrived at the agreed upon location in a silver Nissan Maxima (the "Subject Vehicle"), pulling up next to TFO Spitzer.  [Id. at 6].

Thereafter, TFO Spitzer entered the Subject Vehicle, and Defendant Boyzo-Mondragon handed TFO Spitzer a container of suspected methamphetamine in

exchange for the agreed upon price of $5,500.  See [id. at 6–7].  When Defendant Boyzo-Mondragon left the scene, he was followed by agents to "the 600 Building" of another apartment complex located 1400 Chase Lane in Norcross, Georgia (the "Chase Lane apartments").  [Id. at 7].  Several days later, TFO Spitzer "conducted a spot check" of the Target Property, and saw the vehicle driven by Defendant Boyzo-Mondragon parked in front of the same building.  [Id.].  Based on this information, Magistrate Judge Russell G. Vineyard issued a tracker warrant for the Subject Vehicle on January 22, 2019 ("the Tracker Warrant").  [Id. at 11].

While the tracker was authorized, agents conducted surveillance of Defendant Boyzo-Mondragon.  On February 12, 2019, agents saw two unidentified individuals move trash bags out of apartment 602 of the Chase Lane apartments (the "Target Property") and into the trunk of the Subject Vehicle.  [Id. at 13].  The two left the Target Property, driving to another apartment complex where they threw the trash bags into the trash.  [Id. at 13–14].  Agents retrieved several of the trash bags, and inside they found money remitter receipts in Defendant Boyzo-Mondragon's name, empty containers of chemicals used to make methamphetamine, and several bags with small amounts of methamphetamine.  [Id. at 14].

3

On February 25, 2019, agents followed Defendant Boyzo-Mondragon and an unidentified male as they drove the Subject Vehicle from the Target Property to the Arbor Mill apartments where the drug deal with TFO Spitzer had occurred. [Id. at 14–15]; see also [id. at 6–7]. Defendant Juan Fernando Angel-Talavera ("Defendant Angel-Talavera")[2] pulled up next to the Subject Vehicle, and the unknown man in the Subject Vehicle took a large object out of the Subject Vehicle and placed it in the back seat of the Nissan Frontier Defendant Angel-Talavera was driving. [Id. at 15]. After the vehicles left, Georgia State Patrol stopped the Nissan Frontier and found 4.6 kilograms of methamphetamine in a Home Depot box in the back seat of the car. [Id.]. During questioning, Defendant Angel-Talavera admitted that the unknown man in the Subject Vehicle had placed the box in the back seat, and Defendant Angel-Talavera told law enforcement he was to deliver the methamphetamine to another location. [Id.].

Stationary surveillance at the Target Location saw Defendant Boyzo-Mondragon and the unidentified male return, with the unidentified male carrying "a Home Depot box that appeared to be heavy into the apartment." [Id.]. A short time thereafter, agents

---

[2] Defendant Angel did not file or join any of the pending Motions to Suppress. Instead, on February 26, 2020, Defendant Angel entered a guilty plea as to the first two counts of the indictment. [Doc. 74].

saw Defendant Boyzo-Mondragon leave the target location in the Subject Vehicle "carrying a plastic bag that appeared to be heavy and containing two Zip-Lock plastic containers" that agents suspected contained methamphetamine. [Id. at 15–16]. Based on the information obtained during the February surveillance, Magistrate Judge John K. Larkins, III, extended the Tracker Warrant for an additional 45 days. [Id. at 31–32].

B.    **Subsequent Surveillance and Defendants' Arrests**

On March 13, 2019, agents performing surveillance at the Target Property saw Defendant Boyzo-Mondragon move trash bags from the apartment into a black newer model Acura with an improper "handwritten tag." [Doc. 107-2 at 9]; see also [Doc. 97 ("Tr.") at 53]. Agents then followed Defendant Boyzo-Mondragon to another apartment complex where Defendant Boyzo-Mondragon met with an unidentified man who threw the trash bags into a nearby dumpster. [Doc. 107-2 at 9]. After retrieving the trash bags, the agents found: (1) an empty, 10-pound bucket of a chemical used as a cutting agent for methamphetamine; (2) a handwritten note explaining how much of the cutting agent to place in a batch of methamphetamine; (3) a T-Mobile cellphone box; (4) numerous pieces of folded up aluminum foil that contained a crystalline substance, which field tested positive for methamphetamine; and (5) a plastic baggy that contained residue of suspected methamphetamine. [Id. at 10].

5

The next day, agents saw two individuals later identified as Defendant Archila-Mateo and Maria Corral-Torres ("Corral-Torres") leave the Target Property, with Defendant Archila-Mateo placing a trash bag into the same Acura driven by Defendant Boyzo-Mondragon.  [Id.].  DEA agents told Georgia State Patrol Trooper David Whitehead to stop the vehicle and identify who was inside.  [Tr. at 51–53].  Trooper Whitehead stopped the Acura due to the improper tag and approached the passenger side of the vehicle.  [Id. at 53–54].  As he approached, Trooper Whitehead saw Corral-Torres calling someone listed in the phone as "Eber."[3]  [Id. at 54].  Trooper Whitehead asked the driver, Defendant Archila-Mateo, if he had a driver's license, and Defendant Archila-Mateo "was fumbling around with a wallet," stating "he couldn't find the license."  [Id.at 54–55].  Defendant Archila-Mateo was also unable to produce any insurance or registration for the vehicle, which meant "the vehicle was going to be impounded."  [Id. at 58].

When impounding a vehicle, the Georgia State Patrol takes an inventory of everything in the vehicle, "so no one can come back later on to the departments and say, hey, I had a million dollars in there."  [Id. at 58–59].  Because the trooper will "go

---

[3] Defendant Boyzo's first name is "Ever."

6

over [the inventory] with the driver," Defendant Archila-Mateo would not have been free to leave the scene of the traffic stop until the inventory had been completed. [Id. at 59, 62]. But before doing an impound inventory, Trooper Whitehead decided to seek Defendant Archila-Mateo's consent to search the Acura. [Id. at 59]. Trooper Whitehead presented Defendant Archila-Mateo with a Spanish version of the Georgia State Patrol search and consent form. [Id. at 60–61]. Defendant Archila-Mateo read the form "for several minutes," without any apparent difficulty, and then handed the form to Corral-Torres. [Id. at 61]. Trooper Whitehead then explained that he wanted to search the vehicle, and Defendant Archila-Mateo verbally consented to the search and signed the form. [Id. at 61–62]; see also [Doc. 107-2 at 11].

TFO Spitzer and DEA Special Agent April Combs retrieved the trash bag from the trunk of the Acura during the search. See [Tr. at 80]; [Doc. 107-2 at 11]. Inside, agents found "suspected methamphetamine, which field-tested positive for methamphetamine," and mail with the address of the Target Property on it. [Doc. 107-2 at 11]. During a post-Miranda[4] interview, Defendant Archila-Mateo said "he thinks there are additional drugs located in the [Target Property]." [Id. at 12]. Special Agent

---

[4] Miranda v. Arizona, 384 U.S. 436 (1966).

Combs presented an affidavit providing information regarding the events of March 13 and 14, 2019. [Id. at 2–20]. Based on that affidavit, Judge Larkins issued a warrant to search the Target Property (the "Apartment Warrant"). [Id. at 1–29].

Shortly after the traffic stop of Corral-Torres and Defendant Archila-Mateo, agents detained Defendant Boyzo-Mondragon outside the Target Property in the rear seat of a vehicle and seized two phones from that rear seat ("the Subject Phones"). [Doc. 107-3 at 8]. Defendant Boyzo-Mondragon claimed both phones, stating that one was his "work" phone and the other was his "personal" phone, which "might contain pictures of narcotics." [Id.]. After obtaining the Apartment Warrant, agents searched the Target Property and found approximately 5.6 kilograms of suspected crystal methamphetamine, 3 grams of suspected heroin, and 1.6 grams of suspected cocaine. [Id. at 12–13]. Based on this information, information regarding the traffic stop, and information regarding Defendant Boyzo-Mondragon's sale of methamphetamine to TFO Spitzer, Magistrate Judge Janet F. King issued a warrant for the search of the Subject Phones (the "Phone Warrant"). [Id. at 1–20].

Agent Combs participated in the surveillance of Defendant Archila-Mateo on March 14, 2019, and was the affiant for the Apartment Warrant and the Phone Warrant. [Tr. at 21–22]. A criminal Complaint was filed against Defendant Boyzo-Mondragon

on Friday, March 15, 2019, the day after his arrest, and Agent Combs assisted in the preparation of that Complaint.  [Id. at 25].  On Monday, March 18, 2019, Agent Combs participated in Defendants Boyzo-Mondragon and Archila-Mateo's initial appearances in court.  [Id.].  Agent Combs spent the remainder of the week processing the evidence seized, preparing paperwork about the evidence, shipping the drug evidence to a narcotics lab for testing, and presenting an unrelated case to the grand jury.  [Id. at 25–27].  On March 25, 2019, Agent Combs sent the U.S. Attorney's Office a draft affidavit for the Phone Warrant.  [Id. at 27].  The U.S. Attorney and Agent Combs spent approximately one week editing and revising the affidavit before presenting it to Judge King on April 2, 2019.  [Id. 27].

## C.   Procedural History

Defendant Boyzo-Mondragon filed his motion currently under consideration on July 25, 2019.  [Doc. 53].  In that motion, Defendant Boyzo-Mondragon raises several issues regarding the search warrants but, importantly, he does not point to any inaccuracies in the affidavits in support of those warrants[5] and he never argues that any

---

[5] Defendant Boyzo-Mondragon argues he did not give permission for his cellphones to be searched, but none of the affidavits say he gave permission for such a search.  [Doc. 53 at 6]; see also [Docs. 53-1, 53-2, 53-3, 53-4].  As such, this dispute has nothing to do with the accuracy of any statement in the affidavits.  In a footnote,

supposed inaccuracy was essential to a finding of probable cause.  See [id.].  Nowhere did Defendant Boyzo-Mondragon request an evidentiary hearing regarding the issues raised in this motion.  See [id.].  The case was reassigned to the undersigned, and the parties were given until February 14, 2020, to advise whether the pending motions would require a hearing.  [Docs. 67, 71].

On March 6, 2020, the undersigned held a telephonic conference with all counsel regarding the need for an evidentiary hearing on certain issues raised in the motions. [Doc. 76].  The Government sent an email to the Court and copying defense counsel confirming what would be addressed at the evidentiary hearing.  A copy of that email was introduced at the evidentiary hearing by counsel for Defendant Boyzo-Mondragon as Defendant's Exhibit 1.  In the email, the Government clearly explains that issues regarding the sufficiency of the Tracker Warrant, the Apartment Warrant, and the Phone Warrant would be "handled through briefing alone."  The only issues for the evidentiary hearing would be (1) whether the Government's alleged delay in seeking

---

Defendant Boyzo-Mondragon also vaguely denies "he did anything improper" in the Subject Vehicle. [Doc. 53 at 1–2 n.1].  But Defendant Boyzo-Mondragon fails to point to any actual statements in any of the affidavits that he contends are false or misleading and he does not explain how any alleged inaccuracy was essential to a finding of probable cause.  See [id.].

the Phone Warrant violated <u>Mitchell</u>[6] and (2) Defendant Archila-Mateo's Motions to Suppress.

At the beginning of the evidentiary hearing, counsel for Defendant Boyzo-Mondragon argued the Government should not be permitted to respond to various issues raised in his motion if the Government was "not putting up any evidence" regarding those issues at the evidentiary hearing. [Tr. at 6–7]. In response, the undersigned explained "it is standard practice to allow" briefing on all issues raised in a motion "after the evidentiary hearing," regardless of whether the specific issue is addressed at the evidentiary hearing. [<u>Id</u>. at 12].

Counsel for Defendant Boyzo-Mondragon also argued "the cross-examination of [TFO] Spitzer" and Agent Combs would "be very beneficial to [his] case" and that his cross-examination of those witnesses should not be limited to the <u>Mitchell</u> issue. <u>See</u> [<u>id</u>. at 13]; <u>see also</u> [<u>id</u>. at 9–11]. As the Government noted in its response, during the March 6, 2020 telephone conference, the undersigned stated that the hearing would be "limited to the <u>Mitchell</u> question as to [Defendant] Boyzo-Mondragon." <u>See</u> [<u>Id</u>. at 15]. Later on during the hearing, counsel for Defendant Boyzo-Mondragon noted for

---

[6] <u>United States v. Mitchell</u>, 565 F.3d 1347 (11th Cir. 2009).

the record that he "would like to ask [Agent Combs] about the actual wording" in the affidavit, such as her description of Defendant Boyzo-Mondragon as a "big supplier" or the statement that Defendant Archila-Mateo "work[ed] on behalf of" Defendant Boyzo-Mondragon. [Id. at 48].

## DEFENDANTS' MOTIONS TO SUPPRESS

### A.     Preliminary Matters Raised by Defendant Boyzo-Mondragon

As discussed above, Defendant Boyzo-Mondragon raised certain preliminary issues during the evidentiary hearing that he reiterates in his post-hearing brief. Specifically, he objects to (1) the Government being permitted to brief matters outside of what was presented at the evidentiary hearing and (2) the limitations placed on his cross-examination of the witnesses during that hearing. [Doc. 101 at 7–12]. The Court addresses each issue in turn.

#### 1.     Whether the Government's Brief is Untimely

Defendant Boyzo-Mondragon contends that the Government's responses to his Motions are untimely because the Standing Pretrial Order "prescribes that where the Government fails to respond with fourteen days of being directed, that its lack of response shall indicate non-opposition to the motion." [Doc. 101 at 8–9]. Contrary to Defendant Boyzo-Mondragon's contention, what the Order actually says is that a party

must respond to a motion within fourteen days "**or at such time as set by the Magistrate Judge**." [Doc. 32 at 14–15] (emphasis added).  The undersigned gave the Government until November 6, 2020, to respond to the pending Motions.  [Tr. at 91].  With the consent of the parties, that was extended to November 20, 2020.  [Docs. 105, 106].  The Government timely filed its responses.  [Docs. 107, 108].  As such, to the extent Defendant Boyzo-Mondragon suggests the Government's responses are untimely, his contention is without merit.

Instead, Defendant Boyzo-Mondragon is quibbling with the undersigned's decision to allow the Government to file responses to the Motions more than a year after they were filed.  As the undersigned explained to defense counsel during the evidentiary hearing, "it is standard practice to allow" briefing on all issues raised in a motion "after the evidentiary hearing," regardless of whether the specific issue is addressed at the evidentiary hearing or not.  [Tr. at 12].  As Defendant Boyzo-Mondragon seems to understand, the benefit of this practice is that it allows the Court "to avoid multiple briefings" regarding the same motions.  See [Doc. 101 at 8].  It is within the sound discretion of the Court to "establish a period of time after [a] motion is filed" within which to "submit materials relating to the motion."  United States v. Dunn, 345 F.3d 1285, 1292 (11th Cir. 2003).  Defendant Boyzo-Mondragon fails to

13

cite to any legal authority indicating that it is an abuse of discretion to have all issues addressed in one brief as opposed to scattershot briefings filed more than a year apart. See [id. at 7–9].

The only alleged prejudice Defendant Boyzo-Mondragon tries to point to is that "the Government gets to respond with the benefit of having evidence heard."  See [id. at 9].  But this argument is misplaced because the Government did not use any evidence from the hearing to support its argument that the search warrants are supported by probable cause, and thus the Government did not get any "benefit" by having heard the evidence at the hearing.  See [Doc. 107 at 21 n.4].  Defendant Boyzo-Mondragon knows that none of the evidence presented at the hearing pertained to the sufficiency of the probable cause supporting the search warrants because that is his very next complaint: the Court did not allow questioning regarding the sufficiency of the affidavits. [Doc. 101 at 9–12].

   2.   W*hether the Limitations on Cross-Examination were Proper*

Defendant Boyzo-Mondragon next argues that he "has an unrestricted right to assess and undermine the credibility of [any] witness," which was contravened by the Court limiting his cross-examination "to the narrow Mitchell issue." [Doc. 101 at 11]. But the very cases Defendant Boyzo-Mondragon cites demonstrate that statement is

not true.  United States v. Frost, 61 F.3d 1518, 1525 (11th Cir. 1995), *opinion withdrawn and superseded in part on reh'g*, 77 F.3d 1319 (11th Cir. 1996), *cert. granted, judgment vacated*, 520 U.S. 1226, 117 S. Ct. 1816, 137 L. Ed. 2d 1025 (1997) ("The defendant's right to cross-examination, however, is not without limitation; he is entitled only to an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.") (quotation marks and citations omitted).  Defendants do have a broad, constitutionally protected right to cross-examine witnesses **at trial**, which is what the cases Defendant Boyzo-Mondragon cites stand for.  See [Doc. 101 at 11].  But one of the very cases Defendant Boyzo-Mondragon relies on holds that "the process due at a suppression hearing may be less demanding and elaborate than the protections accorded the defendant at the trial itself."  United States v. Raddatz, 447 U.S. 667, 679 (1980).

Thus, contrary to Defendant Boyzo-Mondragon's assertion, he does not have an "unrestricted right" to cross-examine any witness he wishes in any way he pleases, especially at a suppression hearing.  More to the point, if a defendant wishes to "challenge the veracity of an affidavit in support of a search warrant" he must first make "a 'substantial preliminary showing' that (1) the affiant deliberately or recklessly included false statements, or failed to include material information, in the affidavit; and

15

(2) the challenged statement or omission was essential to the finding of probable cause." United States v. Arbolaez, 450 F.3d 1283, 1293 (11th Cir. 2006) (quoting Franks v. Delaware, 438 U.S. 154, 155–56 (1978)).  As mentioned above, **nowhere** in his Consolidated Motion to Suppress does Defendant Boyzo-Mondragon argue the affidavits contain false statements or material omissions and he completely fails to show any challenged statement or omission was essential to the finding of probable cause.  See [Doc. 53].  Furthermore, the motion never mentions the credibility of the affiants or suggests it is an issue in this case.  [Id.].  As such, Defendant Boyzo-Mondragon would not have been entitled to a hearing on that issue even if he had requested one.  See Arbolaez, 450 F.3d at 1293.

In his reply brief, Defendant Boyzo-Mondragon argues he "is not alleging that the agents made reckless statements in disregard of the truth, but merely that the conveyed information was insufficient to convey probable cause." [Doc. 112 at 13]. Defendant's argument is without merit.  Either the information contained within the four corners of the affidavits was sufficient to convey probable cause, or it was not.  If Defendant Boyzo-Mondragon is not challenging the accuracy of any of the statements, then his attacks on the credibility of the affiants are meritless.  The affidavits speak for themselves.

Defendant Boyzo-Mondragon argues he made a "reasonable assumption" that he would be allowed to cross-examine the affiants regarding the alleged "deficiencies" in the affidavits. [Doc. 101 at 8]. If he made such an assumption, it was not reasonable. Months before the hearing, defense counsel was aware that the Government was asking the Court "simply to rule on the paper" and that the undersigned was "not willing to" require the Government to produce the affiants for cross-examination. See [Tr. at 5]. The undersigned stands by that ruling because Defendant Boyzo-Mondragon's motion does not point to anything in the affidavits that is allegedly false or misleading and made no showing that any such statement was essential to the finding of probable cause. See [Doc. 53]. Next, the undersigned turns to the arguments Defendant Boyzo-Mondragon actually made in his Consolidated Motion to Suppress.

**B.     Defendant Boyzo-Mondragon's Consolidated Motion to Suppress**

In order to be valid, a search warrant must be supported by probable cause, which exists "when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999). An affidavit in support of a search warrant must "state facts sufficient to justify a conclusion that evidence or contraband will probably be found at the premises to be searched." United States v. Martin, 297

17

F.3d 1308, 1314 (11th Cir. 2002) (citation omitted).  This requires "a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity."  <u>Id.</u>  When reviewing an affidavit to determine if it contains probable cause, the entire affidavit must be read together "as a whole."  <u>See United States v. Reed</u>, 700 F.2d 638, 641 (11th Cir. 1983).

When reviewing a search warrant, courts do not "conduct a de novo determination of probable cause."  <u>Massachusetts v. Upton</u>, 466 U.S. 727, 728 (1984).  The reviewing court's role is "only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant."  <u>Id.</u>  This is "a practical, commonsense decision," and courts are not to "interpret supporting affidavits in a hypertechnical manner."  <u>United States v. Miller</u>, 24 F.3d 1357, 1361 (11th Cir. 1994).  Courts want "to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations."  <u>Id.</u>; <u>see also United States v. Robinson</u>, 62 F.3d 1325, 1331 (11th Cir. 1995) (requiring the reviewing court to afford "great deference" to a judicial determination of probable cause).

In his Consolidated Motion to Suppress, Defendant Boyzo-Mondragon challenges (1) the Tracker Warrant, (2) the Apartment Warrant, and (3) the Phone Warrant.  [Doc. 53 at 2–7].  The undersigned addresses each warrant in turn.

1.    *The Tracker Warrant*

Defendant Boyzo-Mondragon's first argument is that the affidavit in support of the tracker warrant provides no basis for concluding the Subject Vehicle's movements "would be likely to yield additional information pertinent to the investigation," because the affidavit "cites absolutely nothing" but the fact that Defendant Boyzo-Mondragon allegedly sold narcotics in the Subject Vehicle one time.  [Doc. 53 at 2].  On review of the affidavit, the Court disagrees and notes that it contains much more.  Specifically, the affidavit details an ongoing drug trafficking conspiracy that resulted in five undercover drug buys between October 2018 and January 2019.  [Doc. 107-2 at 5–6].

Defendant Boyzo-Mondragon correctly notes that the affidavit does not indicate the Subject Vehicle was involved in any of the transactions other than the January 17, 2019 sale to TFO Spitzer.  [Doc. 112 at 4 n.2].  But in assessing whether probable cause existed, Judge Vineyard was also allowed to make "common-sense conclusions about human behavior".  Illinois v. Gates, 462 U.S. 213, 231–32 (1983) (quoting United States v. Cortez, 449 U.S. 411, 418 (1981)).  Using some common sense, brokers of

drug transactions rarely facilitate sales "on a one-time basis," as Defendant Boyzo-Mondragon suggests.  [Doc. 112 at 4 n.2].  But even if the driver of the Subject Vehicle had no other affiliation with the jailhouse broker, this would not mean there was no probable cause for the Tracker Warrant.  The driver used the Subject Vehicle to sell nearly 700 grams of methamphetamine to an undercover officer.  [Doc. 107-2 at 6].  Common sense would suggest that "there is a fair probability" the driver would use the Subject Vehicle to facilitate other such sales in the future, even if the sales were not brokered by the same person.  Brundidge, 170 F.3d at 1352.  Giving "great deference" to Judge Vineyard's determination, as the Court is required to do, the Tracker Warrant was justified by probable cause.  See Robinson, 62 F.3d at 1331.

Defendant relies on Jones v. United States, 565 U.S. 400 (2012), arguing that tracking devices present "special concerns" that "are not to be ignored in the probable cause analysis and in determining the sufficiency of probable cause."  [Doc. 112 at 3–4].  Defendant's reliance on Jones is misplaced.  The Supreme Court never suggested that some kind of "heightened" probable cause analysis applies when analyzing tracker warrants.  Instead, the only issue decided in Jones was whether the use of a tracker to monitor a vehicle's movements "constitutes a 'search.'"  565 U.S. at 404.  The Supreme Court held that it was a search, although various Justices disagreed on exactly why.  In

20

any event, the <u>Jones</u> case is entirely irrelevant because the Government did have a warrant, the Tracker Warrant. <u>See</u> [Doc. 107-2]. Because that warrant was supported by probable cause, as discussed above, Defendant Boyzo-Mondragon's Motion to Suppress fails on this point.

Even if the affidavit supporting the Tracker Warrant did not provide probable cause, the evidence gathered using the Tracker Warrant would still be admissible under the <u>Leon</u>[7] good faith exception. The exclusionary rule "is not an individual right." <u>Herring v. United States</u>, 555 U.S. 135, 141 (2009). It is a "last resort" whose "sole purpose" is "to deter future Fourth Amendment violations." <u>United States v. Smith</u>, 741 F.3d 1211, 1219 (11th Cir. 2013). Indeed, Courts generally do not suppress "evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause." <u>Martin</u>, 297 F.3d at 1313. Suppression is necessary "only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." <u>Id.</u> (quotation and citation omitted). As Defendant Boyzo-Mondragon freely admits, he does not allege "the agents made reckless

---

[7] <u>United States v. Leon</u>, 468 U.S. 897 (1984).

21

statements in disregard of the truth, but merely that the conveyed information was insufficient to convey probable cause." [Doc. 112 at 13]. Thus, even if the information were insufficient to convey probable cause, Defendant Boyzo-Mondragon concedes TFO Spitzer was not "dishonest or reckless in preparing the[ ] affidavit." See Martin, 297 F.3d at 1313. And because TFO Spitzer also had objectively reasonable basis for believing that probable cause existed—because, as discussed above, probable cause did exist—the Leon good faith exception would apply. See Martin, 297 F.3d at 1313.

Given that the evidence gathered using the Tracker Warrant is not subject to suppression, most of Defendant Boyzo-Mondragon's other arguments also fail. For example, Defendant Boyzo-Mondragon's argument that the extension of the Tracker Warrant was not supported by probable cause is based entirely on his contention that the evidence supporting the extension "was derived from" the invalid Tracker Warrant. [Doc. 53 at 3]; see also [Doc. 112 at 5]. Since that evidence is not subject to suppression, this argument fails. Defendant Boyzo-Mondragon further argues the Government needed to "show why an extension was needed," but he cites no authority in support of such a proposition. See [Doc. 53 at 3]. The affidavit in support of the extension more than adequately explains the need for the extension. In addition to the information supporting the initial Tracker Warrant, the affidavit includes additional

information about illegal activity by Defendant Boyzo-Mondragon and, importantly, other unidentified co-conspirators.

On February 12, 2019, agents saw two unidentified individuals move trash bags into the trunk of the Subject Vehicle and then dump those bags at another apartment complex. [Doc. 107-1 at 13–14]. Those bags contained money remitter receipts in Defendant Boyzo-Mondragon's name, empty containers of chemicals used to make methamphetamine, and several bags with small amounts of methamphetamine. [Id. at 14]. On February 25, 2019, agents followed Defendant Boyzo-Mondragon and an unidentified male as they drove the Subject Vehicle to the Arbor Mill apartments where the drug deal with TFO Spitzer had occurred. [Id. at 14–15]; see also [id. at 6–7]. The unknown man then took a large object out of the Subject Vehicle and placed it in the back seat of a Nissan Frontier being driven by Defendant Angel-Talavera. [Id. at 15]. Shortly thereafter, Defendant Angel-Talavera was stopped with 4.6 kilograms of methamphetamine in a Home Depot box in the back seat of the car. [Id.].

Stationary surveillance at the Target Location saw Defendant Boyzo-Mondragon and the unidentified male return, with the unidentified male carrying "a Home Depot box that appeared to be heavy into the apartment." [Id.]. A short time thereafter, agents saw Defendant Boyzo-Mondragon leave the target location in the Subject Vehicle

"carrying a plastic bag that appeared to be heavy and containing two Zip-Lock plastic containers" that agents suspected contained methamphetamine.  [Id. at 15–16].

Such evidence provides more than enough probable cause for an extension of the Tracker Warrant.  See United States v. Harvey, 560 F. Supp. 1040, 1079 (S.D. Fla. 1982) ("Each extension application is supported by the original application, affidavit and order, as well as information gleaned during the intervals. Taking each extension application within its totality of circumstances, there was ample evidence to establish probable cause for each extension in this ongoing, continuing criminal enterprise."). As explained in the affidavit, the extension was necessary to gather "more evidence of violations."  [Doc. 107-1 at 16].  While agents had identified Defendants Boyzo-Mondragon and Angel-Talavera, the surveillance showed the involvement of two to three other individuals who had yet to be identified.  [Id. at 13–16].  For the foregoing reasons, the undersigned **RECOMMENDS** that Defendant Boyzo-Mondragon's Consolidated Motion to Suppress be **DENIED** as to the Tracker Warrant and the extension of the Tracker Warrant.

   2.   *The Apartment Warrant*

Defendant Boyzo-Mondragon next argues the Apartment Warrant was not supported by probable cause because the affidavit is "essentially derived from

information received from the tracking device." [Doc. 53 at 4]. Because, as discussed above, the Tracker Warrant and the extension of the Tracker Warrant were both valid, this argument fails.

Additionally, as the Government argues, Defendant Boyzo-Mondragon is plainly wrong in arguing that all the information supporting the Apartment Warrant was "derived" from information received pursuant to the Tracker Warrant. [Doc. 107 at 10–11]. Agents physically followed Defendant Boyzo-Mondragon to the 600 building of the Chase Lane apartments *before* they placed the tracking device. See [Doc. 107-2 at 7]. Thereafter, agents performed physical surveillance of the property that led to evidence supporting probable cause for the Apartment Warrant.

On March 13, 2019, Agents followed Defendant Boyzo-Mondragon from the Target Property to another apartment complex where he met with an unidentified man who took trash bags from the vehicle driven by Defendant Boyzo-Mondragon and threw them into a dumpster. [Doc. 107-2 at 9]. In those bags were (1) an empty, 10-pound bucket of a chemical used as a cutting agent for methamphetamine; (2) a handwritten note explaining how much of the cutting agent to place in a batch of methamphetamine; (3) a T-Mobile cellphone box; (4) numerous pieces of folded up aluminum foil that contained a crystalline substance, which field tested positive for

methamphetamine; and (5) a plastic baggy that contained residue of suspected methamphetamine. [Id. at 10]. The next day, agents physically observed Defendant Archila-Mateo leaving the Target Property after placing a trash bag in the back of a vehicle that did *not* have a tracker on it. See [id.]. After Defendant Archila-Mateo was later pulled over in that vehicle, TFO Spitzer and DEA Special Agent April Combs retrieved the trash bag from the trunk and found "suspected methamphetamine, which field-tested positive for methamphetamine," and mail with the address of the Target Property on it. [Id. at 11].

Defendant Boyzo-Mondragon argues TFO Spitzer did not identify the Target Property after the drug transaction in January 2019 because "the agents did not shortly thereafter perform surveillance at the [Target] Property." [Doc. 112 at 6]. But Defendant Boyzo-Mondragon cites no authority in support of his argument that agents must perform physical surveillance "shortly" after identifying a target property and, more importantly, his argument is flatly contradicted by the affidavit supporting the Tracker Warrant. TFO Spitzer did not just identify the building in question immediately after the January 2019 drug transaction. He "conducted a spot check" of the Target Property several days after the transaction—before the tracker was placed—

and saw the vehicle driven by Defendant Boyzo-Mondragon parked in front of the same building.  [Doc. 107-2 at 7].

Thus, independent of any evidence derived from the Tracker Warrant, the Apartment Warrant was supported by evidence gathered from physical surveillance of the Target Property in March 2019. See [Doc. 107-2 at 9–11].  And considering all of the evidence Defendants Boyzo-Mondragon and Archila-Mateo took from the Target Property and loaded into the back of the Acura, the Apartment Warrant was obviously supported by ample probable cause.  See United States v. Green, 634 F.2d 222, 226 (5th Cir. 1981) ("The justification for allowing a search of a person's residence when that person is suspected of criminal activity is the common-sense realization that one tends to conceal fruits and instrumentalities of a crime in a place to which easy access may be had and in which privacy is nevertheless maintained.").[8]  For the foregoing reasons, the undersigned **RECOMMENDS** that Defendant Boyzo-Mondragon's Consolidated Motion to Suppress be **DENIED** as to the Apartment Warrant.

---

[8] Fifth Circuit cases decided on or before September 30, 1981, are binding precedent in the Eleventh Circuit.  Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981).

3.     *The Phone Warrant*

Defendant Boyzo-Mondragon first argues the affidavit in support of the Phone Warrant is insufficient because it "makes no showing of how [the] phones specifically would tend to be inculpatory." [Doc. 53 at 5]. But the warrant specifically describes Trooper Whitehead seeing Corral-Torres type a message to "Ever" on the phone she was using. [Doc. 53-4 at 11]. The name "Ever" is quite similar to Defendant Boyzo-Mondragon's first name—Eber—and Corral-Torres had just been seen leaving the Target Property. See [id. at 10]. Shortly after Corral-Torres left the Target Property, Defendant Boyzo-Mondragon was also seen leaving the Target Property. [Id. at 12]. Given the dozen-plus containers of suspected methamphetamine found in the trunk of the car Corral-Torres was in, the 5.6 kilograms of suspected methamphetamine in the Target Property, the fact that Defendant Boyzo-Mondragon sold approximately 700 grams of methamphetamine to an undercover officer, and the affiant's knowledge of how drug traffickers use cellphones, there was more than enough probable cause for the Phone Warrant. See [id. at 5–13]. Defendant Boyzo-Mondrago wants the Court to "separately consider each fact and ignore the interrelationship of the evidence supporting the warrant," but "[p]robable cause does not work that way." United States v. Trader, 981 F.3d 961, 970 (11th Cir. 2020).

28

Defendant Boyzo-Mondragon further argues the affiant characterized him as a multi-kilogram methamphetamine source "without basis." [Doc. 53 at 5]. But again, shortly before his arrest Defendant Boyzo-Mondragon was seen exiting an apartment containing 5.6 kilograms of suspected methamphetamine. [Doc. 53-4 at 12–13]. Defendant Boyzo-Mondragon next argues evidence used to support the Phone Warrant was "derived from the improper tracking," but this argument fails for at least three reasons. First, the Tracker Warrant was supported by probable cause, as explained above. Second, even if it were not, evidence "derived from" the Tracker Warrant would not be subject to suppression because of the Leon good-faith exception, as explained above. Third, the evidence plainly was not "derived from" the tracking of the Subject Vehicle. The evidence supporting the Phone Warrant was gathered through physical surveillance of Defendant Boyzo-Mondragon and his associates. See [Doc. 53-4 at 9–13].

Defendant Boyzo-Mondragon next contends that the information to be seized pursuant to the Phone Warrant is overbroad because it "seemingly covers literally every type of communication and content on the telephones without justifying the need for such an unrestricted scope." [Doc. 53 at 6]. Again, Defendant Boyzo-Mondragon attempts to cherry-pick parts of the affidavit and take them out of context to claim his

constitutional rights were violated.   Defendant Boyzo-Mondragon states that the affidavit is looking for "*any and all* contact limitation [*sic*], call log information, photographs, multi-media messages, GPS data, etc." [Doc. 112 at 8] (emphasis in original).  Defendant Boyzo-Mondragon ignores that the information to be seized is explicitly limited to information that "relate[s] to violations of Title 21, United States Code, Sections 841 (a)(1) and 846" and even further limited to "information from October 2018 through the present." [Doc. 53-4 at 16].

The description of the information to be seized only needs to be "as specific as the circumstances and nature of activity under investigation permit." United States v. Wuagneux, 683 F.2d 1343, 1349 (11th Cir.1982) (citations omitted).  Agent Combs could not possibly have known in advance what particular evidence on the phone(s) would be relevant to her investigation, so the list of information to be seized was as limited as the circumstances and nature of activity under investigation permitted. United States v. Rousseau, 628 F. App'x 1022, 1027 (11th Cir. 2015) (holding that a warrant was not overbroad even though the search "required the seizure of 'most or all computer items'" in a fire station).  Read together "as a whole," the affidavit did not call for the seizure of an overbroad list of information.  See Reed, 700 F.2d at 641.

Defendant Boyzo-Mondragon last[9] argues "the Government inordinately delayed in seeking" the Phone Warrant, in violation of <u>Mitchell</u>. [Doc. 53 at 6–7]. In <u>Mitchell</u>, the Eleventh Circuit held that the detention of an electronic device "for over three weeks before a warrant was sought constitute[d] a significant interference with [a defendant's] possessory interest" because "there was no compelling justification for the delay." 565 F.3d at 1351. However, the Eleventh Circuit emphasized that the test requires "applying a rule of reasonableness that is dependent on all of the circumstances." <u>Id</u>. at 1352. Looking at "all of the circumstances" surrounding the Phone Warrant, it does not run afoul of <u>Mitchell</u>.

---

[9] Defendant Boyzo-Mondragon also makes several irrelevant assertions in his Consolidated Motion to Suppress. Defendant Boyzo-Mondragon "denies" he gave consent for his phones to be searched and argues that "any consent given would be invalid give that such consent was not freely and voluntarily given." [Doc. 53 at 6]. Also, in a footnote, Defendant Boyzo-Mondragon nakedly asserts that "agents looked preliminarily into the cell phones prior to the warrant application." [Doc. 53 at 7 n.2]. Agent Combs testified that Defendant Boyzo-Mondragon's phones were not searched prior to the issuance of the Phone Warrant. [Tr. at 22–23]. Thus, Defendant Boyzo-Mondragon's consent, or the lack thereof, is not relevant. Even if the phones had been illegally searched, no evidence from such an alleged search was used to support the Phone Warrant. <u>See</u> [Doc. 107-3]. Thus, even if an illegal search of the phones occurred, Defendant Boyzo-Mondragon would not be entitled to suppression of evidence obtained pursuant to the Phone Warrant. <u>See</u> <u>United States v. Albury</u>, 782 F.3d 1285, 1291–92 (11th Cir. 2015).

First, the delay in this case was less than that in Mitchell, albeit only slightly. See [Doc. 53-4 at 1]; Mitchell, 565 F.3d at 1351. Second, Defendant Boyzo-Mondragon "was in custody throughout the contested delay and concedes he could not have physically possessed the phones; Mitchell was not in custody and remained free to use computers even after his hard drive was seized." See United States v. Shaw, 531 F. App'x 946, 949 (11th Cir. 2013); see also [Doc. 112 at 11] (conceding "that he could not use a phone while in jail"). Defendant Boyzo-Mondragon criticizes Shaw as "a nonpublished opinion with no binding authority, and over seven years old." [Doc. 112 at 11]. This is true, but Shaw is still highly persuasive given its factual similarity to this case. Tellingly, Defendant Boyzo-Mondragon fails to cite to *any* authority, published or otherwise, in support of his contention that he had a "possessory interest" in a phone he knows he could not have legally possessed while he was in custody. See [Doc. 112 at 10–11]. Third, the affidavit in this case was more detailed than the one in Mitchell, which "contained less than three double-spaced pages of original content." See 565 F.3d at 1351; see also [Doc. 53-4 at 8–13, 15–16].

Furthermore, the delay in this case was more justified than the delay in Mitchell. Agent Combs assisted in the preparation of the Complaint against Defendant Boyzo-Mondragon filed the day after his arrest. [Tr. at 25]. The following business day,

Agent Combs participated in Defendants Boyzo-Mondragon and Archila-Mateo's initial appearances in court. [Id.]. Agent Combs spent the remainder of the week processing the evidence seized, preparing paperwork about the evidence, shipping the drug evidence to a narcotics lab for testing, and presenting an unrelated case to the grand jury. [Id. at 25–27]. On the Monday of the following week, Agent Combs sent the U.S. Attorney's Office a draft affidavit for the Phone Warrant. [Id. at 27]. The U.S. Attorney and Agent Combs then spent approximately one week editing and revising the affidavit before presenting it to Judge King on April 2, 2019. [Id.].

Thus, the delay was caused by a combination of factors including circumstances "necessitating the diversion of [Agent Combs] to another case" and "the nature of [this] investigation." See Mitchell, 565 F.3d at 1353. Unlike Mitchell, which "involved the seizure of a single hard drive," this case involved far more evidence that needed to be processed. See id. Considering "all of the circumstances," the undersigned concludes that the delay in obtaining the Phone Warrant did not cause "a significant interference with [Defendant Boyzo-Mondragon's] possessory interest." See id. at 1351–52. For the foregoing reasons, the undersigned **RECOMMENDS** that Defendant Boyzo-Mondragon's Consolidated Motion to Suppress ([Doc. 53]) be **DENIED**.

**C.**   **Defendant Archila-Mateo's Motion(s)**

*1.*   *The Phone Warrant*

Starting with last things first, Defendant Archila-Mateo also argues the Phone Warrant was lacking in probable cause, is overbroad, and was unduly delayed in violation of Mitchell.  [Doc. 61]; see also [Doc. 104-1 at 12–15].  For the reasons given above, the Phone Warrant was not overbroad and any delay in securing the Phone Warrant did not cause "a significant interference with [Defendant Archila-Mateo's] possessory interest" in the phone(s).  See Mitchell, at 1351–52.[10]  As for his argument that the Phone Warrant was lacking in probable cause, Defendant Archila-Mateo argues the affidavit "simply notes generic descriptions of what might typically be found on cellphones of a drug trafficker, without any particularized showing of how and why searching [his] might reveal useful evidence."  [Doc. 61 at 2–3].

The Court disagrees.  Defendant Archila-Mateo is not some random individual whose phone the Government wanted to search based on nothing but "generic descriptions of what might typically be found on cell phones of a drug trafficker." Defendant Archila-Mateo was seen leaving an apartment that contained 5.6 kilograms

---

[10]   Defendant Archila-Mateo has also been in custody since his arrest on March 14, 2019.

of suspected methamphetamine.  [Doc. 108-1 at 10]; <u>see also</u> [<u>id</u>. at 12–13].  He was seen placing a trash bag into the back of a vehicle, and a subsequent search of that bag revealed that it contained more than a dozen containers of suspected methamphetamine.  [<u>Id</u>. at 10–11].  The passenger of the vehicle Defendant Archila-Mateo was driving "told agents that her phone contains phone numbers for drug suppliers and pinpoint addresses for locations relevant to her drug-trafficking activities." [<u>Id</u>. at 12].  As will be discussed below, when agents looked at that phone— i.e. Corral-Torres's phone—they saw "photographs of what appeared to be illegal narcotics."  [<u>Id</u>. at 11–12].

Thus, the affidavit supporting the Phone Warrant contains more than enough evidence to support the common-sense conclusion that Defendant Archila-Mateo was likely involved in drug trafficking.  This *combined with* Agent Combs's explanation of how drug traffickers use cellphones and the kind of evidence typically found on those phones is sufficient to permit "a conclusion that there [was] a fair probability of finding contraband or evidence" on Defendant Archila-Mateo's phone.  <u>See</u> <u>Brundidge</u>, 170 F.3d at 1352.  Like Defendant Boyzo-Mondrago, Defendant Archila-Mateo appears to want the Court to "separately consider each fact and ignore the interrelationship of the evidence supporting the warrant," but "[p]robable cause does not work that way."

Trader, 981 F.3d a 970.  Reading the affidavit "as a whole," the Phone Warrant was

amply justified by probable cause.  See Reed, 700 F.2d at 641.

    2.    Fruit of the Poisonous Tree

    Defendant Archila-Mateo contends that "DEA Agents" obtained "his cellphone

password" in violation of Miranda.  [Doc. 104-1 at 1–6].  Based on this premise,

Defendant Archila-Mateo argues evidence obtained pursuant to both the Apartment

Warrant and the Phone Warrant should be suppressed because those warrants "relied

upon evidence obtained from [his] phone after Agents illegally obtained his password."

[Id. at 6–8].  Setting aside the issue of whether Defendant Archila-Mateo gave law

enforcement the passcode to his phone before or after he was Mirandized,[11] he is not

---

[11] Although the evidence is sparse, nothing in the record indicates Defendant
Archila-Mateo made any pre-Miranda statements regarding the password to his
cellphone.  Quite the opposite.  Agent Combs was asked whether Defendant Archila-
Mateo "had been Mirandized" at the time "he was asked for and provided the password
code."  [Tr. at 33].  Agent Combs responded that she "believe[s] he had been
Mirandized" based on her conversations "with the troopers."  [Id.].  Nothing in the
record contradicts this assertion.  Defendant notes that neither Trooper Whitehead nor
Agent Combs personally Mirandized Defendant Archila-Mateo, but that proves
nothing.  See [Doc. 104-1 at 2–4].  Agent Combs testified that "Group Supervisor Tom
Ivory" would have been the person who Mirandized Defendant Archila-Mateo.  [Tr.
at 33–34].  Any issue relating to statements Defendant Archila-Mateo made after being
Mirandized has been deferred to the District Judge.  See [id. at 15–16].

36

entitled to suppression of evidence obtained pursuant to the Apartment Warrant or the Phone Warrant for two reasons.

First, none of the evidence used to support either warrant was obtained from Defendant Archila-Mateo's phone, and thus neither the Apartment Warrant nor the Phone Warrant are "tainted" by any alleged pre-Miranda statement.  The Apartment Warrant never contains any reference to any information allegedly obtained from any cellphone.  See [Doc. 108-2].  And the evidence obtained from a "phone at the scene" of the traffic stop discussed in the affidavit supporting the Phone Warrant clearly came from Corral-Torres's phone, not Defendant Archila-Mateo's.  [Doc. 108-1 at 11–12].  To be sure, Agent Combs's testimony on the subject seemingly contradicted the affidavit.  But a complete reading of her testimony demonstrates that Agent Combs's seemingly conflicting answers were caused by a misreading (or misrepresentation) of the affidavit by defense counsel.

Counsel for Defendant Archila-Mateo showed Agent Combs the portion of her affidavit that says "the phone" was accessed and "opened directly to thumbnails of photographs of what appeared to be illegal narcotics."  [Tr. at 38]; see also [Doc. 108-1 at 12].  Defense counsel then insisted, "we're talking about [Defendant] Archila-Mateo's phone here," and Agent Combs responded, "Okay."  [Tr. at 39].  But in fact,

"the phone" that contained "photographs of what appeared to be illegal narcotics" belonged to Corral-Torres, not Defendant Archila-Mateo. [Doc. 108-1 at 11–12] ("The trooper found ELECTRONIC DEVICE NO. 3 in CORRAL-TORRES's pocket. CORRAL-TORRES gave agents the code to unlock **that device**. When agents unlocked the phone at the scene, it opened directly to thumbnails of photographs of what appeared to be illegal narcotics.") (emphasis added).

Thus, even though Agent Combs seemingly agreed her affidavit "used information that the officers obtained at the scene by opening [Defendant Archila-Mateo's] phone," the undersigned finds that is not so. See [Tr. at 39]. The information came from Corral-Torres's phone, and Defendant Archila-Mateo does not have standing to challenge the accessing of Corral-Torres's phone. See Rakas v. Illinois, 439 U.S. 128, 134 (1978) (holding that a "search of a third person's premises or property" does not infringe on the defendant's Fourth Amendment rights).

Second, even if the information had come from Defendant Archila-Mateo's phone, that does not *ipso facto* mean all evidence obtained pursuant to the Phone

Warrant would be subject to suppression.[12]  If an affidavit supporting a search warrant contains evidence gathered in violation of the Fourth Amendment, courts "apply a two-part test to determine whether the evidence seized pursuant to the warrant is admissible." United States v. Albury, 782 F.3d 1285, 1291 (11th Cir. 2015).  The Court must "excise from the affidavit any information" obtained in violation of the Fourth Amendment and determine if the remaining information in the affidavit "supports a finding of probable cause." Id.  If it does, "the evidence seized pursuant to the warrant is admissible." Id. at 1291–92.  Even excluding the one-sentence mention of "photographs of what appeared to be illegal narcotics" in the affidavit, the Phone Warrant is still justified by a veritable mountain of probable cause, as discussed above. See [Doc. 108-1 at 3–12].  As such, the evidence obtained pursuant to that warrant would not be subject to suppression even if the "photographs of what appeared to be illegal narcotics" had been on Defendant Archila-Mateo's phone.  For the foregoing reasons, the undersigned **RECOMMENDS** that Defendant Archila-Mateo's Motion(s)

---

[12]  Again, the Apartment Warrant never contains any reference to anyone's cellphone, and thus it is not in any way "tainted" by evidence allegedly obtained from Defendant Archila-Mateo's phone.

to Suppress be **DENIED** to the extent he seeks suppression of evidence obtained pursuant to the Apartment Warrant and the Phone Warrant.

      *3.    The Search of the Acura*

      Last, Defendant Archila-Mateo argues evidence obtained from the vehicle he was driving should be suppressed because "the traffic stop [was] extended beyond constitutionally acceptable limits." [Doc. 104-1 at 8–12]. Defendant Archila-Mateo's argument is entirely premised on his assertion that Trooper Whitehead "had no reasonable suspicion of criminal activity, other than an improper tag." [Id. at 12]. That is not so. Binding precedent establishes that when an officer conducts a traffic stop, he can "prolong the detention to investigate the driver's license and the vehicle registration." United States v. Purcell, 236 F.3d 1274, 1278 (11th Cir. 2001).

      The first thing Trooper Whitehead did upon approaching the vehicle was ask Defendant Archila-Mateo, if he had a driver's license. [Tr. at 54–55]. Defendant Archila-Mateo responded that "he couldn't find the license." [Id.at 55]. At that point, Trooper Whitehead was no longer merely investigating "an improper tag," as Defendant Archila-Mateo argues. Trooper Whitehead had an articulable suspicion of other illegal activity—namely that Defendant Archila-Mateo was driving without a license, which is an arrestable offense. [Tr. at 58]. Because Defendant Archila-Mateo

was also unable to produce any insurance or registration for the vehicle, "the vehicle was going to be impounded." [Id.]. Before the impound process started, Trooper Whitehead asked for written consent to a search of the vehicle. [Id. at 58–62]. All of this took less than 20 minutes. See [id. at 72].

Trooper Whitehead was permitted to extend the traffic stop to investigate whether Defendant Archila-Mateo had a valid driver's license and whether the vehicle had proper registration. Purcell, 236 F.3d at 1278. Once Trooper Whitehead determined Defendant Archila-Mateo had committed an arrestable offense and that the vehicle would need to be impounded, a search of the vehicle became inevitable.[13] [Tr. at 58–59]. Trooper Whitehead's request for consent to search the vehicle fell within the constitutionally permissible scope of the traffic stop, and as such the evidence obtained during the search is not subject to suppression. See Purcell, 236 F.3d at 1278. For the foregoing reasons, the undersigned **RECOMMENDS** that

---

[13] Because the vehicle "was going to be impounded" and inevitably would have been searched as part of that process, the evidence obtained during the search of the vehicle would be admissible even if Defendant Archila-Mateo's consent to the search were invalid. See United States v. Johnson, 777 F.3d 1270, 1274 (11th Cir. 2015) (holding that evidence obtained during an illegal search was still admissible because the officer "would eventually have had to impound the truck" and "would have had to perform an inventory search," which would have led to the discovery of the evidence in question).

Defendant Archila-Mateo's Motion(s) to Suppress be **DENIED** to the extent he seeks suppression of evidence obtained during the search of the Acura.

## **CONCLUSION**

Based on the foregoing reasons, the undersigned **RECOMMENDS** that Defendants' Motions ([Docs. 53, 55, 61, 104]) be **DENIED**. There are no other pending matters before the undersigned Magistrate Judge,[14] and the undersigned is aware of no problems relating to the scheduling of this case. **IT IS FURTHER ORDERED** and **ADJUDGED** that this action be and the same is hereby, declared Ready for Trial.

**SO ORDERED, REPORTED, AND RECOMMENDED**, this   5   day of February, 2021.

LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

---

[14] As noted above, Defendant Boyzo-Mondragon's Motion to Suppress Statements and request for a Jackson-Denno hearing has been deferred to the District Judge. [Doc. 50]; see also [Doc. 76]. Any issues relating to statements Defendant Archila-Mateo made after being Mirandized have also been deferred to the District Judge. See [Tr. at 15–16].